IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ARROYO, ET AL.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CHATTEM, INC.,<br><br>    Defendant.                       / | No. C 12-2129 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

     This putative class action suit alleges that Dexatrim, a dietary weight loss supplement manufactured, marketed, and distributed by Defendant Chattem, Inc. ("Defendant" or "Chattem"), contains hexavalent chromium, a dangerous chemical. Plaintiff Joanne Arroyo ("Plaintiff") contends that, contrary to what Defendant's marketing campaign would have its consumers believe, Dexatrim is not safe, healthy, or fit for consumption because it is contaminated with hexavalent chromium. Plaintiff alleges that by concealing the presence of hexavalent chromium in Dexatrim, Defendant misled consumers and induced sales that would not have occurred had there been full disclosure. As explained below, because Plaintiff fails to allege plausible facts on which relief can be granted, the Court GRANTS Defendant's Motion to Dismiss without leave to amend.

**I.    BACKGROUND**

     In February 2011, Plaintiff purchased the product Dexatrim Max Complex 7 from a CVS pharmacy located in Concord, California. FAC (dkt. 24) ¶ 8. Dexatrim Max Complex

1 is one of several dietary weight loss supplements manufactured, marketed, and distributed under the Dexatrim brand by Defendant. Id. ¶ 11.

Plaintiff alleges that, according to Defendant's website, Dexatrim products give consumers "the power to lose weight, curb binges, and keep [them] in control of [their] diet." Id. The website further states that the product owes its effectiveness, in part, to the mineral chromium, a primary ingredient in all Dexatrim products. Id. The chromium in Dexatrim purportedly promotes "weight loss," "kick [starts] metabolism," and "naturally [breaks] down carbs and fat while helping you maintain a desire to stay active while dieting." Id. Plaintiff avers that throughout the Dexatrim marketing campaigns, Defendant promotes its weight loss supplement as "safe, healthy, and appropriate for consumption." Id. ¶ 42.[1] Specifically, Plaintiff asserts that Defendant implies Dexatrim's safety through packaging that states that the product (1) should be consumed; (2) is the "#1 Pharmacist Recommended Appetite Suppressant"; (3) is "Ephedra Free"; and (4) contains only the listed ingredients. Id. ¶¶ 1, 8.

Plaintiff contends, however, that Defendant misrepresented the safety of its Dexatrim products by failing to disclose that Dexatrim contains a particularly dangerous type of chromium called hexavalent chromium. Id. ¶¶ 18-20. Chromium is a mineral that typically appears in consumer products in two forms. Id. ¶ 12. Trivalent chromium, or chromium III, is "biologically active" and exists naturally in a number of fruits and vegetables, including broccoli, oranges, and apples. Id. Hexavalent chromium, or chromium VI, is an allegedly "toxic form of chromium that is a product of industrial pollution." Id. Plaintiff alleges that credible scientific and medical authorities have identified hexavalent chromium as a dangerous chemical that gives rise to such diseases as lung cancer, emphysema, and dermatitis when ingested by humans. Id. She cites reports released by the Center for

---

[1] Though Plaintiff claims that Dexatrim was promoted as "safe, healthy, and appropriate for consumption," Plaintiff points to no actual claims of safety by Defendant. Id. Instead, this is an inference that, according to Plaintiff, should be drawn based upon Defendant's promotional materials.

2

Disease Control,[2] the Occupational Safety & Health Administration,[3] and the California Environmental Protection Agency[4] to bolster that allegation. Id. ¶¶ 13-15. Furthermore, Plaintiff alleges, California's Proposition 65 includes hexavalent chromium on its list of "Chemicals Known to the State to Cause Cancer or Reproductive Toxicity." Id. ¶ 15. According to the First Amended Complaint ("FAC"), "[h]exavalent chromium has no nutrition or beneficial qualities and is not recommended for human consumption in any quantity." Id. ¶ 17.

Plaintiff learned that Dexatrim contained hexavalent chromium from ConsumerLab.com, a website that aims to "identify the best quality health and nutritional products through independent testing." Id. ¶ 16 (internal quotation marks omitted). In March 2010, ConsumerLab.com published the results of a test designed to detect hexavalent chromium and lead in various dietary supplements that contained chromium as an active ingredient. Id. The tested Dexatrim Max contained between 1.6 and 3.2 micrograms of hexavalent chromium per daily serving (one to two caplets). Id. ¶ 17. Based on these results, ConsumerLab.com recommended that customers avoid Dexatrim, "particularly as other chromium-containing products are available that passed ConsumerLab.com testing." Id. (internal quotation marks omitted).

---

[2] "An increased risk of lung cancer has been demonstrated in workers exposed to [hexavalent chromium] Cr(VI) compounds. Other adverse health effects associated with Cr(VI) exposure include dermal irritation, skin ulceration, allergic contact dermatitis, occupational asthma, nasal irritation and ulceration, perforated nasal septa, rhinitis, nosebleed, respiratory irritation, nasal cancer, sinus cancer, eye irritation and damage, perforated eardrums, kidney damage, liver damage, pulmonary congestion and edema, epigastric pain, and erosion and discoloration of the teeth." Id. ¶ 13 (quoting http://www.cdc.gov/niosh/topics/hexchrom).

[3] Plaintiff alleges that OSHA regulations regard hexavalent chromium as an occupational safety hazard. Id. ¶ 14. "OSHA has determined based upon the best evidence currently available that at the current permissible exposure limit for CR(VI), workers face a significant risk to material impairment of their health. The evidence in the record for this rulemaking indicates that workers exposed to Cr(VI) are at an increased risk of developing lung cancer. The record also indicates that occupational exposure to Cr(VI) may result in asthma, and damage to the nasal epithelia and skin." Id. (quoting Federal Register 71:10099-10385).

[4] Plaintiff alleges that on August 20, 2009, the Office of Environmental Health Hazard Assessment of the California Environmental Protection Agency sought to limit levels of hexavalent chromium in drinking water by announcing a public health goal of 0.06 parts per billion. Id. ¶ 15. This announcement purportedly followed newly released tumor incidence data. Id.

Plaintiff alleges that, throughout the class period, the Dexatrim website and product packaging acknowledged only the existence of trivalent chromium; no promotional materials or labels listed hexavalent chromium as an ingredient or warned consumers of its presence. Id. ¶¶ 19, 20, 22-24. Thus, at the time of purchase, Plaintiff alleges that Plaintiff and other similarly situated class members did not know and could not have reasonably been expected to know[5] that Dexatrim's chemical composition included hexavalent chromium. Id. ¶¶ 3, 8. Plaintiff also alleges that Dexatrim's website provides "healthy living tips" and provides safety information in its "Frequently Asked Questions"[6] section. Id. ¶ 21.

Plaintiff further alleges that, had Defendant disclosed the presence of hexavalent chromium to its consumers, she and other members of the class would not have purchased Dexatrim Max Complex 7 and other Dexatrim brand products. Id. ¶¶ 3, 8, 25. She contends that the presence of a dangerous chemical known to increase the risk of serious medical conditions is a "material fact [to] which a reasonable person would attach importance in choosing whether or not to purchase Dexatrim." Id. ¶ 25.

On April 27, 2012, Plaintiff brought a putative class action suit against Defendant, asserting four causes of action: (1) negligent misrepresentation; (2) fraudulent concealment; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code Sections 1750-1784; and (4) violation of California's Unfair Competition Law ("UCL"), California Civil Code Section 17200. Compl. (dkt. 1) ¶¶ 35-63. Defendant moved to dismiss all claims pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First Mot. (dkt. 9) at 1. The Court held a hearing at which it granted Defendant's motion but gave Plaintiff leave to amend, instructing Plaintiff to include "facts . . . concerning the

---

[5] The ConsumerLab.com test was published in March 2010, but Plaintiff did not purchase Dexatrim until February 2011. FAC ¶¶ 8, 16. This cuts against Plaintiff's allegations that class members could not have known that Dexatrim contained hexavalent chromium. But, at oral argument, Plaintiff's counsel stated that Plaintiff was not aware of the study prior to purchasing Dexatrim.

[6] The FAQ section contains the following language: "Is Dexatrim safe? As with all dietary supplements, it is important to carefully follow the recommended dosage and thoroughly read the warning label before starting the regimen. Dexatrim is not an appropriate weight control aid for persons suffering from certain medical conditions. Please see our label information for each specific product (click on links below) and consult your physician for further information." Id. ¶ 21.

4

circumstances of the purchase and [Plaintiff's] reliance on the particular statements that were made in connection with the product." Transcript (dkt. 23) at 10. On August 2, 2012, Plaintiff filed her FAC with the same four causes of action. FAC ¶¶ 41-68. Defendant again moves to dismiss all claims pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. (dkt. 25) at 1.

## II. DISCUSSION

Defendant makes two arguments in favor of dismissal. First, Defendant brings a Rule 12(b)(1) motion, asserting that Plaintiff lacks Article III standing to bring her claims in federal court. Mot. at 2. Second, Defendant argues that the FAC fails to state a claim as to each cause of action and therefore warrants dismissal under Rule 12(b)(6). Id. at 5. As discussed below, Plaintiff has met her burden to establish standing, but her claims nevertheless fail because the allegations describing Defendant's conduct fail to state a claim.

### A. Article III Standing

Defendant contends that Plaintiff has not pleaded an injury sufficient to establish Article III standing. Mot. at 2, 12. Defendant cites a number of cases to support its conclusion, most from outside of the Ninth Circuit. First Mot. at 4-7.[7] Plaintiff responds that recent Ninth Circuit precedent establishes standing. Opp'n (dkt. 26) at 21-22. Plaintiff is correct.

#### 1. Legal Standard for Standing

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III standing is a threshold requirement for federal court jurisdiction that warrants analysis separate from the merits of the claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). Because standing implicates a federal court's subject matter jurisdiction, Defendants may raise challenges to standing on a 12(b)(1) motion to dismiss. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

---

[7] In its Motion to Dismiss, "Chattem incorporate[d] [its First] Motion to Dismiss and Reply by reference." Mot. at 13.

Under Article III, the party seeking standing must show that it has "(1) suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). The Supreme Court refined its definition of a qualifying injury in fact as one that is "distinct and palpable, as opposed to merely abstract . . . not conjectural or hypothetical." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (internal quotations omitted). The burden is on the party invoking federal jurisdiction to establish these elements. Lujan, 504 U.S. at 561.

### 2. Analysis of Standing

Defendant challenges Plaintiff's standing, arguing that she has failed to allege a concrete injury in fact, the first element required under Article III. Mot. at 12. Among cases involving allegations of contaminated foods and pharmaceuticals, plaintiffs typically rely on two types of injuries to confer standing: (1) the increased risk of harm from exposure to a dangerous substance, and (2) the financial loss from purchasing a product in reliance on false or misleading information. See, e.g., Herrington v. Johnson & Johnson Consumer Cos., Inc., No. 09-1597, 2010 WL 3448531, at *2 (N.D. Cal. Sept. 1, 2010) (ruling on pleadings for both types of injuries); Koronthaly v. L'Oreal USA, Inc., 374 Fed. Appx. 257 (3d Cir. 2010) (same), aff'g., No. 07-5588, 2008 WL 2938045 (D.N.J. July 29, 2008). In short, injury in fact generally appears in the context of personal injury or economic loss.

The FAC characterizes Plaintiff's injury as the second type, focusing exclusively on the money Plaintiff lost from her initial sales transaction. See FAC ¶¶ 48, 52 ("Plaintiff and the Class are not seeking damages arising out of personal injuries"); id. ¶ 67 (Plaintiff and the class allege "economic harm by losing money as a result of purchasing Defendant's contaminated products" with regard to their UCL claim). Thus, Plaintiff's standing hinges on the adequacy of her injury under the economic theory.

6

The fundamental issue on standing is: where Plaintiff alleges concealment of product information unknown to her at the time of purchase, the discovery of which would have affected her purchasing decision, is monetary loss from the sales transaction a sufficient injury in fact to establish Article III standing?

An allegation that a plaintiff would not have purchased a product if it had been labeled accurately is sufficient to establish injury under California's consumer laws. Degelmann v. Advanced Med. Optics Inc., 659 F.3d 835, 840 (9th Cir. 2011). Plaintiff alleges that she would not have purchased Dexatrim had she known that hexavalent chromium was present in the product. FAC ¶ 25. Thus, Plaintiff's allegations are sufficient to establish standing due to economic injury.

### B. Failure to State a Plausible Claim For Relief

As the FAC pleads an injury sufficient to confer standing under Article III, this Court will evaluate the merits of Defendant's 12(b)(6) motion.

#### 1. Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. Id. A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

Under Rule 9(b), the "circumstances constituting fraud" or any other claim that "sounds in fraud" must be stated "with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-

7

Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  To comply with Rule 9(b), a plaintiff must plead with particularity the time and place of the fraud, the statements made and by whom, an explanation of why or how such statements were false or misleading, and the role of each defendant in the alleged fraud.  KEMA, Inc. v. Koperwhats, No. 09-1587, 2010 WL 3464737, at *3 (N.D. Cal. Sept. 1, 2010).  In short, the complaint must include the "who, what, when, where, and how." Cooper v. Pickett, 137 F.3d 616, 627 (1997) (internal quotations omitted).

### 2. Analysis of Claims

The Court must address two issues in determining if the 12(b)(6) motion should be granted.  First, the Court must determine if the particularity requirement of 9(b) applies to the claims.  Second, the Court must determine, based on the applicable standard, if the pleadings are sufficient.

### a. Rule 9(b) Applies to the Claims

Plaintiff argues that Rule 9(b) does not apply because its claims do not "sound in fraud." Opp'n at 17.  In support of this position, Plaintiff argues that each of the elements of fraud under California law[8] are not required by its causes of action.

But, because all of Plaintiff's claims are grounded in accusations of fraudulent conduct, she must satisfy the pleading requirements of Rule 9(b).  In Kearns v. Ford Motor Co., the Ninth Circuit noted that

> While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).

567 F.3d 1120, 1125 (9th Cir. 2009).  Kearns also held that a plaintiff's nondisclosure claims were subject to Rule 9(b).  Id. at 1126-27.  Thus, whether 9(b) applies depends upon Plaintiff's pleadings.

---

[8]The elements of common law fraud are "(a) misrepresentation (false representation, concealment, nondisclosure); (b) knowledge of falsity . . . (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003).

8

Here, the FAC alleges that Defendant marketed its Dexatrim products as "safe, healthy, and appropriate for consumption," despite knowing that they were tainted with hexavalent chromium. FAC ¶¶ 18, 42. It further alleges that Defendant actively concealed this information with the intent to induce consumer sales. Id. ¶¶ 18, 46. And it alleges that Plaintiff and other consumers in the class reasonably relied on the misrepresentations of product safety and suffered economic harm from the purchase(s) that resulted. Id. ¶¶ 47, 48, 50, 54, 61, 68. These allegations touch upon all elements of common law fraud.

Accordingly, the particularity requirements of Rule 9(b) apply to each claim.

### b. The Pleadings are Insufficient

To meet Rule 9(b)'s particularity requirements for each of its causes of action, the complaint must include the "who, what, when, where, and how." Cooper v. Pickett, 137 F.3d 616, 627 (1997) (internal quotations omitted).

The FAC has arguably alleged with the requisite specificity the content of the alleged affirmative misrepresentations by noting that Dexatrim's packaging indicates that the product can be consumed, is the "#1 Pharmacist Recommended Appetite Suppressant," and is "Ephedra Free." Id. ¶ 1. Further, the FAC specifically alleges the "what" of the omissions, stating that "Dexatrim products have never listed hexavalent chromium as an ingredient and never contained a warning or other disclosure regarding the presence of hexavalent chromium." Id. ¶ 19. The FAC also specifically alleges why Plaintiff believes the affirmative representations and omissions to be false or misleading, noting that several agencies have found hexavalent chromium exposure to be dangerous. Id. ¶¶ 13-15. Finally, the FAC pleads with particularity the role of Defendant in the alleged fraud, stating that "Defendant has actively concealed the presence of hexavalent chromium . . . and refused to include a warning . . ." Id. ¶ 18.

Nonetheless, the FAC is deficient in alleging with particularity the circumstances surrounding (1) why the affirmative representations and/or omissions were of a "material fact" that would have affected Plaintiff's decision to purchase, and (2) Plaintiff's reliance on both the alleged affirmative misrepresentations and omissions. Both materiality and reliance

9

are required for fraud claims based on affirmative misrepresentation and omission. Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001); see Menlanson v. Un. Air Lines, Inc., 931 F.2d 558, 563 (9th Cir. 1991).

### i. Materiality

As pleaded, Plaintiff appears to offer two overlapping theories of why the presence of hexavalent chromium is a material fact. First, Plaintiff alleges that the presence of hexavalent chromium is material because it makes Dexatrim unsafe. FAC ¶ 2 ("Hexavalent chromium is . . . unsafe for human consumption."). Second, Plaintiff alleges that the presence of hexavalent chromium is material because Plaintiff would not have purchased Dexatrim if she knew that it contained any level of hexavalent chromium. Id. ¶ 3 ("Plaintiff . . . would not have purchased Dexatrim if the presence of hexavalent chromium was properly disclosed.").

First, most of the FAC's allegations are of misrepresentations about the safety of the product, not misrepresentations that the product does not contain hexavalent chromium.[9] For instance, Plaintiff alleges that "Chattem promoted Dexatrim as a safe . . . supplement." FAC ¶ 1. Also, Plaintiff alleges that "Defendant represents . . . that Dexatrim is safe to use by recommending on the packaging that the product be consumed and by stating on the packaging that the product is the '#1 Pharmacist Recommended Appetite Suppressant' and is 'Ephedra Free.'" Id. These alleged affirmative misrepresentations do not state that Dexatrim Max Complex 7 does not contain hexavalent chromium. Instead, they state, arguably, that the affirmative misrepresentations create the inference that Dexatrim Max Complex 7 is safe. By calling these statements affirmative misrepresentations, Plaintiff is really saying that Dexatrim Max Complex 7 was promoted as safe but is actually unsafe.

In order to support this claim, Plaintiff must specifically allege that hexavalent chromium at the level present in Dexatrim Max Complex 7 makes statements about the

---

[9] As discussed below, Plaintiff does allege that all ingredients are listed on the packaging and, because hexavalent chromium is not listed, this is an affirmative representation that it is not there. Id. ¶ 1. But, as Defendant argued at the motion hearing, and Plaintiff did not contest, there is no statutory or regulatory requirement that Defendant list hexavalent chromium on the packaging.

10

product's safety false or misleading. See Meaunrit v. ConAgra Foods Inc., No. 09-2220, 2011 WL 2867393, *9 (N.D. Cal. Jul. 20, 2010) (finding that conclusory allegations about "appropriate quality control measures" failed to state a claim for relief). While Plaintiff makes general allegations that hexavalent chromium is unsafe, she does not plead with the required particularity what level of hexavalent chromium makes Dexatrim Max Complex 7 unsafe. See FAC ¶¶ 12-15. Many foods and drugs on the market are not one hundred percent safe,[10] and general allegations that a product's safety is less than one hundred percent do not give rise to a lawsuit for fraud. If it did, then every consumer would be able to bring a suit for economic injury anytime the consumer became aware of an additional, unlabeled product risk after his or her purchase.[11] Under this theory of materiality, as in Meaunrit, Plaintiff's FAC is insufficient because it does not allege a level of hexavalent chromium in Dexatrim Max Complex 7 that materially changes its safety profile from safe to unsafe. Plaintiff instead presupposes that any amount of hexavalent chromium would impact safety so much as to affect a purchasing decision. Id. ¶ 25. Such argument is misplaced because the studies cited by Plaintiff determine risk by evaluating outcomes at various hexavalent chromium exposure levels. See id. ¶¶ 13-15 ("[A]t the current permissible exposure limit (PEL) for Cr(VI), workers face a significant risk . . ."). Thus, under this theory of materiality, Plaintiff's FAC does not contain sufficient factual support to survive the motion to dismiss.

---

[10]Even tofu has its perils. See, e.g., Lindsey Konkel and Environmental Health News, Could Eating Too Much Soy Be Bad For You?, Scientific American (November 3, 2009), http://www.scientificamerican.com/article.cfm?id=soybean-fertility-hormone-isoflavones-genistein (reporting that animal studies suggest that eating large amounts of soy could "reduce fertility in women, trigger premature puberty and disrupt development of fetuses and children").

[11]The Court notes that Plaintiff is in the awkward position of explicitly disclaiming increased risk of harm as an injury, FAC ¶¶ 48, 52, 67 ("Plaintiff and the Class are not seeking damages arising out of personal injuries."), while at the same time premising her claim of financial loss on the idea that she would not have purchased the product had she known of the increased risk of harm such a purchase would entail. Financial loss cases typically arise when there is no alleged injury to the Plaintiff other than the financial loss itself. See Chavez v. Blue Sky Natural Bev. Co., 340 Fed. Appx. 359, 361-62 (9th Cir. 2009) (holding that a Plaintiff's assertion that he bought a beverage because he believed it was made in New Mexico was sufficient to survive a motion to dismiss). The rationale underlying financial loss cases, that a purchaser should receive what he paid for, seems diminished where the purchaser claims no injury based on an increased risk of harm while at the same time claiming that an increased risk of harm is the reason why the purchaser did not receive the benefit of his bargain. See id. at 361.

1    Second, the FAC alleges that the failure to disclose hexavalent chromium on the
2 packaging, and the affirmative misrepresentation that all ingredients are listed on the
3 packaging, are material facts that would have affected Plaintiff's decision to purchase the
4 product. Id. ¶¶ 1, 19. Plaintiff's argument is that, had the presence of hexavalent chromium
5 been disclosed, Plaintiff would not have purchased the product. Opp'n at 11. The Court
6 need not consider this theory of materiality because, as discussed below, Plaintiff cannot
7 demonstrate reliance.

### ii. Reliance

The FAC alleges that Plaintiff relied on Defendant's affirmative misrepresentations and omissions in making her decision to purchase Dexatrim Max Complex 7, stating that Plaintiff "relied upon the representations that the product was safe for consumption, that it was the '#1 Pharmacist Recommended Appetite Suppressant;' that it was 'Ephedra Free;' and that all the ingredients contained in the product were listed on the packaging." FAC ¶ 8 (emphasis added). The FAC also states that "Plaintiff and the other Class members purchased Dexatrim because they had been exposed to the promotion, advertising and, [sic] marketing of Dexatrim." Id. ¶ 23 (emphasis added). Further, the FAC states that "Plaintiff and the Class reasonably and materially relied on Defendant's material misrepresentations" and that "Plaintiff and the Class purchased Defendant's products in reliance on Defendant's failure to warn or apprise consumers of the extent of Defendant's conduct and the toxic nature of Dexatrim and based on the reasonable belief that it was safe to consume Dexatrim and Dexatrim was not tainted with toxic chemicals." Id. ¶¶ 47, 51 (emphasis added).

Though Plaintiff quotes from the packaging and describes some of the circumstances surrounding her purchase, the FAC does not allege that she read the packaging prior to purchasing the product in Feb. 2011.[12] Id. ¶ 8. Further, Plaintiff's allegations that she relied on "promotion, advertising and, [sic] marketing" are not pleaded with particularity. See id. ¶ 23. While Plaintiff describes material present in sections of Defendant's website, nowhere

---

[12] At oral argument, Plaintiff's attorney was unable to state that Plaintiff actually read the packaging or ingredient list prior to purchasing the product.

12

1 does Plaintiff allege when, where, or how she was exposed to or accessed this promotion,
2 advertising, or marketing prior to purchase. Id. ¶ 21.

3 Additionally, though the FAC includes allegations that the CDC, OSHA, and OEHHA
4 find hexavalent chromium unsafe, nowhere does Plaintiff allege that she knew about the
5 dangers of hexavalent chromium from these or any other sources prior to purchase. Id.
6 ¶¶ 13-15. In fact, at oral argument, Plaintiff's attorney conceded that Plaintiff did not know
7 anything about hexavalent chromium's dangers prior to purchasing the product. Thus,
8 Plaintiff cannot show that—even had she read it—she relied on the absence of hexavalent
9 chromium on the label in making her decision to purchase Dexatrim. Further, Defendant
10 argued at the motion hearing, and Plaintiff did not contest, that there is no regulation
11 requiring disclosure of hexavalent chromium on the ingredients list. Thus, the FAC is
12 insufficient to establish that the presence of hexavalent chromium on the label, website, or
13 promotional materials would have affected Plaintiff's decision to purchase Dexatrim.

14 Recognizing that Plaintiff's original complaint did not sufficiently plead reliance, the
15 Court granted Plaintiff leave to amend with instructions to add "facts . . . concerning the
16 [Plaintiff's] reliance on the particular statements that were made in connection with the
17 product." Transcript at 10. Plaintiff's additions are not sufficient to survive a Rule 12(b)(6)
18 motion to dismiss.

### IV. CONCLUSION

20 Plaintiff has already had an opportunity to amend her complaint and was specifically
21 instructed to add facts describing "the circumstances [i.e., who, what, when, where, and how]
22 of the purchase and [Plaintiff's] reliance on the particular statements that were made in
23 connection with the product." Id. Because Plaintiff's FAC does not state claims with the
24 required particularity, the Court GRANTS Defendant's Motion to Dismiss, this time with
25 prejudice. See Low v. LinkedIn Corp., No. 11-1468, 2012 U.S. Dist. LEXIS 97012, at *37

13

(N.D. Cal. July 12, 2012) (granting motion to dismiss with prejudice because amendment would be futile).

**IT IS SO ORDERED.**

Dated: November 6, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE